UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARVIN NASH,<br><br>        Plaintiff,<br><br>        v.<br><br>HORIZON FREIGHT SYSTEMS, INC.,<br><br>        Defendant. | Case No. 19-cv-01883-VC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 72 |

      Horizon moves for summary judgment on Nash's individual claims. The motion is granted in part and denied in part.

      1. <u>Preemption of Meal and Rest Break Claims</u>

      Federal law vests the Secretary of Transportation with the authority to "review State laws and regulations on commercial motor vehicle safety." 49 U.S.C. § 31141(c)(1). If the Secretary makes certain findings, the details of which are not relevant here, the state law or regulation "may not be enforced"—in other words, it is preempted. 49 U.S.C. § 31141(a). Exercising this authority on behalf of the Secretary, the Federal Motor Carrier Safety Administration determined in 2018 that California's Meal and Rest Break rules are preempted under section 31141. *See* California's Meal and Rest Break Rules for Commercial Motor Vehicle Drivers; Petition for Determination of Preemption, 83 Fed. Reg. 67470 (Dec. 28, 2018). Importantly, however, the preemption decision applies only to drivers subject to the Hours of Service regulations promulgated under the Federal Motor Carrier Safety Act. 83 Fed. Reg. 67480. And those regulations apply only to drivers operating in interstate commerce. *See* 49 U.S.C. §§ 13501, 31132, 31136, 31502. In this case, the primary preemption question is whether Nash operated in interstate commerce.

The parties have not adequately analyzed the standard by which the Court must assess the evidence presented. They appear to assume that the question of whether Nash operated in interstate commerce is a factual question that must be sent to a jury if there is a genuine dispute of material fact. That's unlikely. To be sure, there are certain "brute facts" to be determined regarding the nature of Nash's work. *See Merck Sharp & Dohme Corp. v. Albrecht*, 139 S. Ct. 1668, 1680 (2019). But those factual questions are "subsumed" within the quintessentially legal question of preemption, and therefore likely don't "warrant submission alone or together with the larger pre-emption question to a jury." *Id.*; *see also Yamagata v. Reckitt Benckiser LLC,* ___ F. Supp. 3d. ___, 2020 WL 1505724, at *3 (N.D. Cal. Mar. 30, 2020). In other words, this is likely a question that requires the Court to find the facts in connection with its preemption analysis at summary judgment.

In any event, the judge vs. jury question doesn't matter in this case. Assuming that the Court were required to decide the facts now, it would easily conclude that Nash operated in interstate commerce. But even applying the typical summary judgment standard, no factfinder could reasonably conclude, on the current record, that Nash did not operate in interstate commerce.

Horizon's evidence strongly supports a conclusion that Nash drove entirely, or at least overwhelmingly, in interstate commerce. While his trips were all or almost all within the boundaries of California, those trips were part of interstate commerce so long as there was a "practical continuity of movement" between his intrastate transportation of goods and the prior or subsequent travel of those goods across state lines. *See Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 568 (1943). Horizon's CFO testifies that "Horizon, as a drayage company, only operates interstate in California. Horizon does not have a license or permit to operate intrastate in California." Bosak Decl. ¶ 15 (Dkt. 72-10). Similarly, Horizon's Director of Sales and Operations, describing Horizon's business in California, explains that Horizon drivers exclusively haul "intermodal containers" to or from railyards or ports of entry, where the freight has either arrived from, or is headed, out of state. Naus Decl. ¶¶ 5-8, 13 (Dkt. 72-20).

Specifically with respect to Nash, Horizon has produced business records (consisting of excerpts from Nash's "settlement statements") reflecting approximately 240 trips that he took over the two-and-a-half-year period that he worked for Horizon. *See* Bosak Decl., Ex. I (Dkt. 72-12). The vast majority of these trips either began or ended at the Union Pacific railroad facility in Lathrop, CA.[1]

Against this evidence, Nash essentially argues that *some* of his trips were purely intrastate. He points to certain trips listed in the settlement statements that involved two California locations, neither of which was a railyard. *See* Dkt. 81 at 17-20. He offers vague hearsay testimony in his deposition suggesting that some of the railyard trips might have involved picking up or dropping off loads that had arrived at the railyard from somewhere else in California, rather than out of state. Workman Decl., Ex. A at 74:13-75:4 (Dkt. 81-3). And he testifies in his declaration about various types of trips he performed that may not have involved any interstate aspect. Nash Decl. ¶¶ 13-14 (Dkt. 81-15).

Nash certainly casts doubt on the absolute statements made by Horizon's executives about the nature of Horizon's business. It appears, for example, that some of Nash's trips did not in fact involve transporting freight to or from a railyard or port of entry. And viewing the evidence in the light most favorable to Nash, it's possible that Nash performed a substantial amount of purely intrastate activity while working for Horizon. If the question at summary judgment were whether Nash's trips were *entirely* interstate in nature, then there would be a genuine dispute. But that's not the question. Nash doesn't need to show merely that a substantial amount of his work qualified as intrastate; he needs to produce evidence sufficient to reasonably conclude that *almost all* of his work was intrastate. *See Walling*, 317 U.S. at 571-72 (explaining that an employee operates in interstate commerce where "a substantial part" of his work related to goods traveling in interstate commerce). Indeed, Nash himself describes the test as whether his

---

[1] Horizon has submitted other business records whose admissibility Nash contests. Although those records appear to further support Horizon's position, they are not relied upon here, because it's easy to conclude that Nash drove in interstate commerce without them.

activities had a connection with interstate commerce that is more than *de minimis*. *See Reich v. American Driver Service, Inc.*, 33 F.3d 1153, 1155 (9th Cir. 1994) ("[E]ven a minor involvement in interstate commerce can subject that employee to the Secretary of Transportation's jurisdiction."). And whatever dispute exists over precisely how Nash's activities were allocated between intrastate and interstate trips, there is no evidence in the record that could reasonably support the conclusion that nearly all of Nash's work was solely intrastate.[2]

Nash's other arguments against preemption fail. Nash raises various challenges to the validity of the Secretary's 2018 preemption determination, but jurisdiction to review that determination is vested solely in the Court of Appeals. *See* 28 U.S.C. § 2342(3)(A); 49 U.S.C. § 31141(f). Nash also argues that this Court should not defer to the Secretary's preemption determination, but that misconstrues the law: the Court is "deferring" not to the Secretary but to Congress, which has forbidden the enforcement of state laws that the Secretary determines are preempted using a process designed by Congress. *See* 49 U.S.C. § 31141. Lastly, Nash argues that the Secretary's preemption decision cannot be applied "retroactively" to bar claims for meal and rest break violations that occurred prior to the 2018 determination. But as most courts to consider the question have concluded, section 31141 strips states of the power to "enforce" state laws that the Secretary determines are preempted, regardless of when the underlying conduct occurred. *See, e.g.*, *Sales v United Road Services*, No. 19-CV-08404-JST, 2020 WL 4035072, at *3 (N.D. Cal. July 17, 2020). This is consistent with the Supreme Court's characterization of section 31141 as authorizing the Secretary to "void" and "invalidate" state laws "upon finding that their content or multiplicity threatens to clog the avenues of commerce." *City of Columbus v.*

---

[2] Nash focuses, in his briefing and argument, on the need for evidence of the shipper's intent in determining whether a particular shipment is part of the practical continuity of movement of goods in interstate commerce. But that issue is not relevant here. This is not a case about whether the flow of interstate commerce is interrupted when goods temporarily come to rest in a warehouse. *See Watkins v. Ameripride Services*, 375 F.3d 821, 826 (9th Cir. 2004). The intent of the shipper matters when it's unclear whether a trip from an in-state warehouse to an in-state customer is the last leg of an interstate journey or a journey that should be understood as distinct. Many of Nash's trips were not from in-state warehouses to in-state customers; rather, they were directly to or from the railyards for interstate shipment or interstate receipt.

*Ours Garage and Wrecker Service, Inc.*, 536 U.S. 424, 441–42 (2002). It is consistent with the view of the Federal Motor Carrier Safety Administration, which issued a legal opinion concluding that the 2018 determination should be applied regardless of when the lawsuit was filed or the conduct at issue occurred. FMCSA Legal Opinion on Applicability of Preemption Determinations to Pending Lawsuits (Mar. 22, 2019).[3] And it is consistent with the nature of federal preemption under the Supremacy Clause, which reflects the principle that "state law is *nullified* to the extent it actually conflicts with federal law." *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1226 (9th Cir. 2013) (emphasis in original) (quotation omitted). Accordingly, Nash's meal and rest break claims are preempted, which means Horizon is entitled to summary judgment on them. In the event a circuit court invalidates the Secretary's preemption determination, Nash may seek relief from this ruling.

    2. <u>Judicial Estoppel</u>. Horizon contends that Nash's reimbursement claim, as well as his entire lawsuit, should be barred under the doctrine of judicial estoppel. Considering the relevant factors in the circumstances of this case, it's clear that applying judicial estoppel would not be appropriate here. *See New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001); *Ah Quin v. County of Kauai Department of Transportation*, 733 F.3d 267, 272 (9th Cir. 2013) ("Judicial estoppel is a discretionary doctrine, applied on a case-by-case basis."). Nash was not required to describe himself as an employee rather than an independent contractor when making representations to the bankruptcy court prior to any judicial determination of his classification. Indeed, it appears that Nash was not even aware of the classification issue when he filed for bankruptcy or when his bankruptcy plan was confirmed. His failure to later inform the bankruptcy court of his claims against Horizon seems likely to have been the result of inadvertence or mistake. But regardless, the bankruptcy court has not accepted any misrepresentations about his claims against Horizon, since he apparently became aware of, and filed, those claims only after the bankruptcy confirmed his plan. And the fact that he has now

---

[3] Available at https://www.fmcsa.dot.gov/safety/fmcsa-legal-opinion-applicability-preemption-determinations-pending-lawsuits.

informed the bankruptcy court of these claims negates the argument that he has obtained an unfair advantage justifying the application of judicial estoppel. *See Ah Quin*, 733 F.3d at 273–74.[4] Horizon's request for summary judgment is denied with respect to its judicial estoppel arguments.

3. <u>Truth-in-Leasing Regulations</u>. Horizon makes only a cursory argument, which it abandons entirely in its reply brief, that Nash's reimbursement claims are preempted by the federal truth-in-leasing regulations. The argument also appears to be wrong. *See Goyal v. CSX Intermodal Terminals, Inc.*, 2018 WL 4649829 (N.D. Cal. Sept. 25, 2018). Horizon's request for summary judgment is denied.

4. <u>PAGA Claims and Inaccurate Wage Statements Claim.</u> There seems to be no dispute that Nash can't pursue his PAGA claims, and indeed those claims have already been dismissed. Similarly, as stated in the Court's prior ruling, Nash can pursue his inaccurate wage statements claim except to the extent he seeks penalties. Horizon's motion is denied with respect to these claims since the Court has already granted the relief Horizon seeks.

5. <u>Cal. Labor Code § 221.</u> As this Court has previously held, section 221 does not create a private right of action. *See Goldthorpe v. Cathay Pacific Airways Ltd.*, No. 17-CV-03233-VC, 2018 WL 5307018, at *1 (N.D. Cal. Jan. 16, 2018). Summary judgment is therefore granted to Horizon with respect to this claim. However, Horizon hasn't shown at this stage that these alleged violations can't provide the predicate for a claim under the UCL.

5. <u>UCL.</u> Horizon's motion for summary judgment with respect to the UCL claim is denied.

**IT IS SO ORDERED.**

Dated: July 27, 2020

VINCE CHHABRIA
United States District Judge

---

[4] The requests for judicial notice are granted.