UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARVIN NASH,<br><br>        Plaintiff,<br><br>    v.<br><br>HORIZON FREIGHT SYSTEMS, INC.,<br><br>        Defendant. | Case No. 19-cv-01883-VC<br><br>**ORDER GRANTING MOTION FOR CLASS CERTIFICATION**<br><br>Re: Dkt. No. 105 |

      Marvin Nash brought this suit against Horizon Freight Systems on behalf of himself and other truck drivers who contract with Horizon to perform drayage services in California. The contract these drivers must sign, called the Equipment Lease and Service Agreement, classifies them as independent contractors. Nash contends this classification is incorrect because the drivers act as Horizon's employees, entitled to the benefits and protections afforded to employees (but not independent contractors) under California law. After extensive motion practice, three of Nash's claims remain: (1) a claim for reimbursement of business-related expenses under California Labor Code section 2802; (2) a claim for statutory damages based on inaccurate wage statements under California Labor Code section 226; and (3) a claim under California's Unfair Competition Law.

      Nash now moves to certify a class of California drivers who contracted with and drove for Horizon from February 22, 2015 to the present. Horizon opposes class certification, and also moves for a stay pending the outcome of two cases: *Vasquez v. Jan-Pro Franchising*

*International*, *Inc.* before the California Supreme Court and *California Trucking Association v. Becerra* before the Ninth Circuit. Nash's motion for class certification is granted. Horizon's motion for a stay is denied without prejudice to renewing the request at a later point.

Horizon focuses largely on the issue of predominance in its opposition to class certification. In support of its predominance argument, the company submits nearly identical declarations from 21 California truck drivers who currently have contracts with Horizon. These declarations suggest that the drivers intended to become independent contractors when signing their contracts, and want to retain that status moving forward. Many courts have expressed skepticism about the use of these "happy camper" declarations to defeat a motion for class certification in wage and hour cases. *See, e.g.*, *Soares v. Flowers Food, Inc.*, 320 F.R.D. 464, 476 (N.D. Cal. 2017); *O'Connor v. Uber Technologies, Inc.*, 2015 WL 5138097, at *12-13 (N.D. Cal. Sept. 1, 2015), *reversed on other grounds* 904 F.3d 1087; *Smith v. Cardinal Logistics Management Corp.*, 2008 WL 4156364, at *7 (N.D. Cal. Sept. 5, 2008). And for good reason. The legal distinction between employees and independent contractors was created to protect workers whose negotiating power relative to the companies that hire them is quite weak. Independent contractors, in contrast to typical employees, usually have the ability to negotiate on a more level playing field with the companies they take on as clients. The California Legislature has thus conferred statutory protections upon employees (minimum wage, reimbursement for business expenses, and the like) that cannot be negotiated away. And because these protections are so important, the law creates a presumption that workers act as employees rather than as independent contractors. *See generally Cotter v. Lyft, Inc.*, 60 F. Supp. 3d 1067, 1073-74 (N.D. Cal. 2015); *see also Smith*, 2008 WL 4156364, at *7. It thus would be strange, in a case that's largely about whether a company's workers lack the independence they need to effectively

negotiate for themselves, to assign much evidentiary value to declarations from workers submitted by the company alleged to have misclassified them.

Beyond the fact that happy camper declarations are submitted by companies with potentially significant influence over the workers who sign them, there is a further concern that the declarants are relying on incomplete, or even false, information. The typical happy camper declarations, including the ones in this case, imply that workers want to remain independent contractors for the purpose of preserving their schedule flexibility. But nothing in California law prevents companies like Horizon from providing the exact same scheduling flexibility for "employees" as they provide to "independent contractors." *See Dynamex Operations W. v. Superior Court*, 4 Cal.5th 903, 961 n.28 (2018); *O'Connor*, 2015 WL 5138097, at \*13; *see also People v. Uber Technologies, Inc.*, 56 Cal.App.5th 266, 323 (Cal. Ct. App. 2020). Despite this, companies often make misleading statements to the contrary, suggesting (including to their workers) that the change in classification will require eliminating flexibility. *See, e.g.*, *Rogers v. Lyft, Inc.*, Case No. 3:20-cv-01938-VC, Dkt. No. 25-12; *Valdez v. Uber Technologies, Inc.*, Case No. 4:20-cv-07496-JST, Dkt. No. 1-3. This is another reason to be suspicious of these sorts of declarations, submitted by companies claiming their workers are not misclassified and want to preserve their independent status.

In any event, Horizon's reliance on these declarations reflects a misunderstanding of the inquiry at the class certification stage. Assuming for current purposes that this case will be governed by the common law test laid out in *S.G. Borello & Sons, Inc. v. Department of Industrial Relations*, 48 Cal.3d 341 (1989), the relevant question at this stage is whether Horizon's "right of control over its carriers, whether great or small [is] sufficiently uniform to permit classwide assessment." *Ayala v. Antelope Valley Newspapers, Inc.*, 59 Cal.4th 522, 533

(2014).[1] In other words, "is there a common way to show [Horizon] possessed essentially the same legal right of control with respect to each of its carriers." *Id.* Here, there is a common way to determine the right of control Horizon retained over its drivers: all members of the putative class signed a standard form Lease Agreement specifying the legal rights Horizon retained over them. And even if there are minor variations in the different Lease Agreements used during the class period, Horizon's right of control remained substantively unchanged across the different versions. *See O'Connor*, 2015 WL 5138097, at *21.[2]

As part of its predominance argument, Horizon also argues that individual questions about whether truck drivers were engaged in a "distinct occupation or business"—one of the relevant factors under the *Borello* test—makes class certification improper. Horizon emphasizes that drivers who contract with Horizon have the option to hire third parties to complete the routes that the contracted drivers are assigned, and are also able to drive for other companies while still under contract with Horizon. Horizon thus argues that common issues do not predominate because determining whether a driver was improperly classified as an independent contractor will require looking at their specific personal history and whether they hired third parties or worked for other trucking companies. Several judges have declined to certify proposed classes of drivers based on their conclusion that individualized inquiries under this "distinct occupation or business" factor defeated predominance. *See, e.g.*, *Soares*, 320 F.R.D. at 482-84; *O'Connor*, 2015 WL 5138097, at *22-24.

---

[1] Horizon does not argue that class certification would be improper under the ABC test, as laid out in *Dynamex* and as recently codified into California law.

[2] Because *Ayala* was decided by a state court, it is not strictly controlling on the question of whether a class should be certified in federal court under Rule 23. But its discussion of California's common law test for classifying workers shows why certification under Rule 23 is appropriate despite the possibility that differences may exist in how a company exercises its right to control workers.

It's possible that these decisions place too much emphasis on this one "secondary" *Borello* factor, while not placing enough faith in the ability of trial courts to manage a class action when there is variance on this one factor but commonality on all the others. After all, plaintiffs need only show that common questions "predominate" over individual questions, not that common questions exist to the complete exclusion of individual questions. Fed. R. Civ. P. 23(b)(3); *see also Ayala*, 59 Cal.4th at 539-540. But in any event, here, perhaps unlike in the cases cited above, the proposed class of drivers is relatively small and the records on whether these drivers hired third parties or drove for other companies are well-kept and readily ascertainable. *Cf. Soares*, 320 F.R.D. at 483. It will be easy to determine which of the approximately 110 proposed class members engaged in either of these business practices, and to carve out a subclass of these drivers if necessary.

Horizon raises some of the same issues in arguing that Nash is not an adequate class representative. But for the reasons already explained, the declarations submitted by Horizon and signed by current drivers purporting to embrace their status as independent contractors do not create a conflict of interest that would render Nash an inadequate class representative. Moreover, Nash can adequately pursue the expense reimbursement claim on behalf of the proposed class. Although Nash's deposition testimony about the specifics of his reimbursement claim was not always clear, he sufficiently articulated that he intended to seek reimbursement for costs incurred to drive for Horizon. His testimony was not inherently incredible or dishonest, nor does it reflect a misunderstanding about his duties as a class representative. *See O'Connor*, 2015 WL 5138097,

at *11-12; *see also Local Joint Executive Board of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001).[3]

Nash's motion to certify a class of California drivers who contracted with and drove for Horizon from February 22, 2015 to the present is granted. Horizon's motion to stay is denied without prejudice to renewing the request when the issues in the cases pending before the California Supreme Court and the Ninth Circuit are more immediately relevant to the issues in this case. The requests for judicial notice are both granted. Horizon's motion to seal is denied on the ground that it's grossly overbroad. *See* Civil Standing Order ¶ 31. This denial is without prejudice to filing a more narrowly tailored motion within 14 days of the date of this order. If no such motion is filed, the exhibit will simply be unsealed.

A further case management conference to set the schedule for the remainder of the case will take place Tuesday, February 2, at 2 p.m. via zoom. A joint case management statement is due one week in advance of the conference.

**IT IS SO ORDERED.**

Dated: December 23, 2020

VINCE CHHABRIA
United States District Judge

---

[3] Horizon raises two other arguments against class certification that are barely worth mentioning. First, Horizon argues that class certification of Nash's inaccurate wage statement claim under section 226 is improper because there is no common proof of damages. But section 226 provides for a set amount of statutory damages per pay period if an employer fails to provide wage statements, precluding the need for individualized damage determinations. *See* Cal. Labor Code § 226(e); *Johnson v. Serenity Transportation, Inc.*, 2018 WL 3646540, at *15 (N.D. Cal. Aug. 1, 2018). Similarly, Horizon argues against class certification of Nash's reimbursement claim because Nash doesn't identify how expenses can be determined on a class wide basis. But claims for reimbursement are suitable for class treatment when there is a "uniform policy as what is reimbursed and what is not." *Villalpando v. Exel Direct Inc.*, 303 F.R.D. 588, 609 (N.D. Cal. 2014); *see also Johnson*, 2018 WL 3646540, at *14-15. Here, a uniform reimbursement policy is explicitly laid out in the Lease Agreement.